IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORRAINE GRESS | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY HEALTH SYSTEM | : | NO. 13-CV-5414 |
| Defendant | : | |

### MEMORANDUM & ORDER

Ditter, J.                                                                                              August 20, 2018

This is an employment discrimination action brought by Lorraine Gress against Temple University Health System. Gress alleges that she was subjected to age and disability discrimination and that Temple retaliated against her for taking medical leave and for complaining about management's discriminatory treatment of her and other employees. She claims that this discrimination and retaliation led to the termination of her employment. Gress brings claims of discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq*.; the Pennsylvania Human Relations Act ("PHRA"), 43 P.S.§§ 955(a) and (e); and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq*. She brings claims of retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.; the PHRA, and Title VII of the Civil Rights Act of 1964 ("Title VII"). Presently before me is Temple's motion for summary judgment which I will grant.

### I. FACTUAL BACKGROUND

The following facts are not in dispute or are viewed in the light most favorable to Gress, the non-moving party. Gress was a 61 year old woman at the time of her

termination, October 10, 2011. Gress had been hired in 1996 by Temple as a medical assistant at their Northeast location. In 1998, Gress was promoted to office manager. In 2007, Gress was promoted to regional manager, and in 2008 to regional director. Renee Reedman was the director of physician practice operations and Gress's supervisor for the relevant time period.

In or around January 2010, Gress complained to Carolyn Ashburn, a human resource manager, about Reedman's harassment of her and other employees. This harassment included Reedman discussing Gress' weight in front of others, referencing Gress' daughter's teen pregnancy in front of others, referring to Gress' home as stuck in the eighties, referring to African American employees as "porch monkeys," and a lesbian employee as a "dyke." Ashburn told Gress that she would investigate her complaints and follow up with Reedman. In February or March of 2010, Gress met with Reedman and Dr. Richard Mankin, CEO of Temple Physicians Inc. ("TPI"), to discuss and resolve the issues. During the meeting, Gress and Reedman resolved their issues and Gress was satisfied.

In March of 2010, Gress notified Ashburn of another complaint against Reedman. Reedman had embarrassed her by referring to her daughter's ex-boyfriend as her son-in-law. In June 2010, Reedman provided Gress with her annual performance review. The review was favorable, noting Gress was an important part of the management team. Gress' employment reviews by Reedman continued to be favorable after her complaints against Reedman.

In March 2011, Gress made a third complaint about Reedman with Ashburn after Reedman told another employee, Linda King, that she could not have taken a position at another location because of the color of her skin and the fact that the practice is racist. Ashburn investigated the complaint and Reedman apologized to King. Human Resources held a mediation for Gress and Reedman to improve communication. In her deposition testimony, Gress stated that she believed that Reedman treated everyone the same regardless of age or disability.

On May 9, 2011, Gress commenced FMLA leave as she underwent mitral valve replacement surgery. Temple approved her leave until August 22, 2011.

While Gress was out on FMLA leave, a cash discrepancy was discovered by the TPI controller, David Reppert, that occurred at the Northeast location where Linda King was the office manager. In that capacity, King was responsible for receiving payments made by Temple's patients and then depositing those payments in the appropriate Temple account. Gress was King's supervisor and was responsible for auditing King's financial work.

Thereafter, Brenna Woods, HR manager, conducted an investigation into the missing cash. Woods spoke to King and told her that she needed to meet with her to discuss the cash discrepancies but King did not show up for the meeting. King was told that Temple would make a decision based on the information they had and her refusal to participate in the ongoing investigation. Woods contacted King and told her she had been discharged. It was confirmed that cash was missing over a three-year period, occurring at almost every deposit. In total, $130,000 had been stolen. Apparently the person who

stole the money would prepare a slip showing the correct amount to be deposited but then prepare another slip to make the actual deposit. This second slip was then destroyed so it would appear the correct amount had been deposited. Gress had never detected any inconsistent deposits.

When Gress returned to work, she was interviewed by Woods and James Frank, director of internal audit. It is uncontested that Gress was responsible, as regional director, for auditing the office managers at the practices under her supervision. Gress admitted that she allowed the office managers, including King, to select which deposit records would be given to her for audit. Gress also stated that Temple Northeast did not receive confirmation faxes of deposits from the bank.

Gress was advised that she was being investigated for possible involvement in the theft. Woods also told Gress that she was not to discuss the investigation with anyone or remove any documents. Nevertheless, Gress discussed the investigation with Reedman and Dr. Mankin. Gress also removed King's original bank reconciliation documents from a locked cabinet. She took the documents with her and kept them for four days.

On September 13, 2011, Gress brought the documents to an operations meeting with Woods, Reedman, and the three other regional directors. Gress presented the documents and began discussing the investigation. The documents included the bank fax documents that showed the amount actually deposited – documents Gress said were never received. The fax confirmations had Gress' initials on them. Gress stated that her initials showed that King was reconciling and she was auditing. After investigation, it

was determined that the bank faxes were inconsistent with what should have been deposited.

On September 14, 2011, Gress met with Woods and she was told that her employment was suspended pending further investigation. Her employment was terminated on October 10, 2011, for misrepresenting that Temple Northeast had not received fax confirmations from the bank, insubordination (for removing documents and for discussing the on-going investigation), gross neglect of job duties (audit failure), and interference with an ongoing investigation.

## II. STANDARD OF REVIEW

The standard for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well established. Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that under those facts it is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). I must consider the evidence in a light most favorable to the non-moving party. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion. Here, Gress must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). She "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992); *see also Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

## III. DISCUSSION

Gress brings claims of discrimination under the Age Discrimination in Employment Act ("ADEA"); the Family and Medical Leave Act ("FMLA"); the Americans with Disabilities Act of 1990 ("ADA"); and the Pennsylvania Human Relations Act ("PHRA"). I will address each claim individually.

**Count I: Age Discrimination Claims Under the ADEA and PHRA**

**A. *Prima Facie* Case of Discrimination**

Gress brings age discrimination claims under the ADEA and PHRA both of which prohibit an employer from discriminating against an individual based on her age.[1] 29 U.S.C. § 623. To prevail in an employment discrimination case under each of these statutes, Gress must first come forward with enough evidence to establish a *prima facie* case of discrimination against Temple *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (finding it is appropriate to analyze age discrimination claims pursuant to *McDonnell Douglas*).

To establish a *prima facie* case of age discrimination, Gress must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action. An inference of discrimination may be made to help a

---

[1] Because the same legal standard applies to both the ADEA and the PHRA, I review them collectively. *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004).

6

*prima facie* case if she was replaced by a younger person. *McDonnell Douglas*, 411 U.S. at 802; *Smith* 589 F.3d at 690. Gress is only required to produce evidence sufficient to create an inference that an employment decision was based upon an illegal discriminatory criterion. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356-57 (3d Cir. 1999). The burden then shifts to Temple to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, Gress must show by a preponderance of the evidence that the legitimate reasons proffered by Temple were a pretext for discrimination. *Id.* at 804.

Gress has established three elements of her *prima facie* case: she was over the age of forty when the alleged discrimination occurred; she was qualified for her position; and she suffered an adverse employment action – termination. To establish discrimination, Gress asserts that upon her termination, her work was divided between Amanda Schleuter and Irina Ivleva, both younger employees.

Absorption of work by younger employees can give rise to an inference of age discrimination. *Bullock v. Balis*, (E.D. Pa. 2000). However, without additional evidence of discrimination, the division of work among younger employees is not enough to make out a *prima facie* case. *Id.* Gress fails to provide any additional evidence of age discrimination. For example, she cannot show that her termination was part of a pattern of discharging older employees and parceling their work out to younger employees, because there were two other regional directors, ages 60 and 54. Both are still employed by Temple. In the absence of any evidence of discrimination, Gress has failed to make out a *prima facie* case.

### B. Legitimate/Nondiscriminatory Reason

Even if Gress could establish a *prima facie* case, any reasonable fact finder would have to conclude that she has failed to carry her burden at the next step of the *McDonnell Douglas* analysis. Once a plaintiff has established her *prima facie* case, the burden shifts to defendant to offer a legitimate, non-discriminatory reason for its actions. *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). This burden is "relatively light," and fulfilled by the employer "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). As set forth above, Temple's decision to terminate Gress was based on her insubordination, misrepresentation, interference with an audit, and gross neglect of job duties. These are clearly legitimate, non-discriminatory reasons for her termination so the burden shifts back to Gress to show that these reasons were pretexts for discriminatory action.

### C. Evidence of Pretext

To establish pretext, evidence shown by Gress "must allow a fact finder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (internal citations, emphasis and footnotes omitted). In other words, Gress must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the defendants' proffered legitimate reasons for her termination that a reasonable fact finder could rationally find them 'unworthy of credence' and, hence, infer that the

8

defendants did not act for asserted non-discriminatory reasons." *Id.* at 765. Gress has not proffered any evidence of pretext.

The ultimate test in employment discrimination cases is whether discriminatory animus was a motivating factor in causing the adverse employment action. *Costa v. Desert Palace*, 539 U.S. 90, 95 (2003). Gress has not offered any evidence, direct or circumstantial, from which it could be found that age discrimination was the motivating factor in her termination. *See Ezold v. Wolf Block*, 983 F.2d 509, 527 (3d Cir. 1992) (without some evidence to cast doubt on the employer's stated reason, the court will not interfere in an otherwise valid management decision).

After viewing the evidence in its entirety, I conclude that no reasonable fact finder could rationally find Temple's reasons for her termination unworthy of credence, and thus, conclude that Temple acted for a discriminatory reason.

As the Third Circuit has stated:

> A decision affecting an employee in the protected class does not become a discriminatory decision merely because made in the context of a reorganization, or because a younger employee is benefitted by the decision. Rather, the inquiry is whether the decision was motivated by the affected employee's age. If the employer's decision was based on legitimate business concerns, i.e., choosing the person the employer believes is the best person for a job, the employee's disagreement with this decision does not prove pretext.

*Billet v. CIGNA Corp.*, 940 F.2d 812, 827 (3d Cir. 1991) (citation omitted) *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Gress has failed to present any evidence that her termination was motivated by

9

her age; therefore, I will grant Temple's motion for summary judgment for her age discrimination claims.

**Count II: Family and Medical Leave Act ("FMLA")**

The FMLA entitles "employees to take reasonable leave for medical reasons."[2] 29 U.S.C. § 2601(b)(2). "The FMLA is meant to prohibit employers from retaliating against employees who exercise their rights, refusing to authorize leave, manipulating positions to avoid application of the Act, or discriminatorily applying policies to discourage employees from taking leave." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005) (citing 29 C.F.R. § 825.220). When an employee returns from FMLA leave, the employer must restore the employee to the same or equivalent position she held, with equivalent benefits and with conditions of employment comparable to those she had when she left. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)).

The FMLA contains two relatively distinct types of provisions prohibiting employers from: (1) interfering with an employee's exercise of this right; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); *Callison*, 430 F.3d at 119. Gress alleges violation of the retaliation provisions of the FMLA.

Gress argues that Temple retaliated against her by terminating her position after she took FMLA. To prove an FMLA retaliation claim, Gress must show that: (1) she

---

[2] "Eligible employees 'shall be entitled to a total of twelve workweeks of leave during any twelve-month period' if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Callison*, 430 F.3d at 119 (citing 29 U.S.C. § 2612(a)(1)(D)).

invoked her right to FMLA benefits; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the invocation of her rights. *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009) (modifying *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)). Retaliation claims based on circumstantial evidence are guided by the burden-shifting framework from *McDonnell Douglas*. *Lichenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012).

There is no dispute that Gress properly invoked her rights under the FMLA thereby establishing the first element of her *prima facie* case. In order to demonstrate the second prong, Gress must establish that she suffered an adverse employment decision, which she did – termination. However, Gress has not shown that her termination was causally related to the invocation of her FMLA rights. As previously discussed, Temple has presented evidence of a legitimate, nondiscriminatory reason for terminating Gress' employment that Gress has failed to rebut. I will grant Temple's motion for summary judgment for this portion of her FMLA claim.

**Count III: Disability Discrimination Claims Under the ADA and PHRA**

Gress argues that in violation of the ADA and the PHRA Temple terminated her employment because she had been diagnosed with mitral stenosis, shortness of breath, vertigo and hypertension.[3] A plaintiff presents a *prima facie* case of discrimination under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA;

---

[3] Because the PHRA and the ADA are "basically the same," Pennsylvania courts generally interpret the PHRA in accord with its federal counterpart. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (citations omitted).

(2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs, Inc.,* 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F3d 827, 831 (3d Cir. 1996)).

### A. Disability Determination

Gress fails to establish that she was "disabled" within the meaning of the ADA. In order to be considered disabled under the ADA, Gress must 1) have a physical or mental impairment that substantially limits one or more major life activities; 2) have a record of such impairment; or 3) be regarded as having such impairment. *Taylor v. Phoenixville School District,* 184 F.3d 296, 306 (3d Cir. 1998).

#### 1. Substantially Limited/Record of Impairment

Substantially limited means that an individual is either: 1) unable to perform a major life activity that the average person in the general population can perform; or 2) significantly restricted as to the condition, manner or duration under which her or she performs the activity as compared to the condition, manner or duration under which the average person in the general population performs the activity. In determining whether an impairment is substantially limiting, the court should consider factors such as: 1) the nature and severity of the impairment; 2) the length or expected duration of the impairment; and 3) the actual or expected permanent or long term impact of the impairment. *Id*.

Although Gress suffers from mitral stenosis, shortness of breath, vertigo and hypertension, she fails to establish that any of these conditions, or any combination of these conditions, substantially limit her in any major life activity. On the contrary, Gress stated that none of her conditions impacted her ability to perform her job duties or responsibilities and that she rarely missed time at work. She never requested any accommodations during her employment except for a larger monitor for "vision problems" that are not identified as a disability in her complaint. Gress testified that the walk from the parking lot to the office building caused her to become short of breath. This testimony is not enough to establish that Gress suffered from a disability. The only document Gress provided to Temple regarding her disability was her FMLA paperwork concerning her mitral valve replacement surgery. The forms indicated the probable duration of her condition to be 90 days. A probable duration with this short a time frame has consistently been held insufficient to establish a disability under the ADA. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 765 (3d Cir. 2004).

In the absence of evidence of how these conditions substantially limited a major life activity, Gress has not established that she is disabled.

### 2. Regarded as having an impairment

Even if she is not actually disabled, Gress could establish a violation of the ADA and PHRA by showing she was terminated because she was regarded by Temple as having a limiting impairment. Similarly, Gress has not presented any evidence that she was regarded as having an impairment. Gress does not allege any comments were ever made about her health or her surgery. Gress did not miss any work outside of her FMLA

13

leave for surgery, and she neither requested nor required any accommodation as a result of her asserted impairment. I find that there is no evidence that Temple regarded her as having an impairment. *See Murphy v. United States Parcel Service, Inc.*, 527 U.S. 516 (1999).

In summary, there is no evidence that Gress was disabled within the meaning of the ADA nor was she so regarded. Accordingly there is no need to discuss her qualifications or her job termination, the second and third prongs of the *prima facie* test.

**Count IV: Title VII Retaliation Claims**

Gress brings race, sexual orientation, and religious discrimination claims asserting that termination of her employment constituted retaliatory discharge under Title VII. To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Gress must bring forward evidence that: 1) she engaged in protected activity; 2) her employer took adverse action against her; and 3) a causal link exists between the protected activity and the employer's adverse action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F. 3d 173,177 (3d Cir. 1997).

The first element of a *prima facie* retaliation claim is satisfied by a showing of complaints to the employer, whether oral or written, formal or informal. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). For an employee's complaint to be protected, he or she must have an objectively reasonable, good faith, belief that the activity he or she opposes is unlawful under Title VII.

The second element, adverse action, in the retaliation context, encompasses a larger class of circumstances than the narrower adverse employment action in a

substantive discrimination case. *Thompson v. North American Stainless, L.P.*, 131 U.S. 863 (2011). In addition to actions that affect the terms and conditions of employment, Title VII's anti-retaliation provision more broadly proscribes any employer action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. However, adverse actions are only those actions that produce an injury or harm. *Burlington Northern and Santa Fe Railway Co. V. White*, 548 U.S. 53, 67 (2006). They are not petty slights, minor annoyances or simple lack of good manners. *Id.* at 68. Gress must show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 69. Material adversity is relevant because it is important to separate significant from trivial harms. *Id*. Title VII does not set forth "a general civility code for the American workplace." *Id. (quoting Oncale v Sundowner Offshore Services , Inc.*, 523 U.S. 75, 80 (1998)). Finally, there must be evidence of a causal link between the protected activity and the adverse action.

### A. Protected Activity

For her race, sexual orientation, and religion based claims, I find that Gress fails to meet the first prong of the *prima facie* retaliation test. While Reedman's workplace behavior was offensive to Gress and even unprofessional, it did not rise to the level of unlawful conduct under Title VII. While a victim of retaliation need not prove the merits of the underlying discrimination complaint in order to seek redress, a reasonable person must be able to conclude that there was discrimination made unlawful by Title VII. *Moore,* 461 F.3d at 344. Gress herself stated that Reedman handled all employees alike, rudely, and that she treated everyone in the same manner. Gress fails to establish

anything other than the fact that Renee Reedman made remarks that were insulting and impolite.

In summary, Gress fails to establish a *prima facie* case of retaliation based on her complaints to Human Resources about Renee Reedman. Accordingly there is no need to discuss adverse action or causal link, the second and third prongs of the *prima facie* test.

## V. CONCLUSION

Having found that no reasonable finder of fact could conclude that Gress's termination was based on any discriminatory animus, I must grant the defendant's motion for summary judgment on all counts. An appropriate order follows.